**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:13-cr-00977-DCN |
| | ) | |
| KENNETH KENNEDY SHANNON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

This matter is before the court on defendant Kenneth Kennedy Shannon's ("Shannon") motion for compassionate release, ECF No. 1496. For the reasons set forth below, the court grants in part Shannon's motion for compassionate release and resentences Shannon to a term of imprisonment of 360 months.

## I.  BACKGROUND

### A.  Offense Conduct

In 2013, the city of Charleston, South Carolina experienced a marked increase in heroin overdoses, prompting the Charleston Police Department and the Drug Enforcement Administration to investigate local drug distribution networks. Presentence Report ("PSR") ¶ 8. Investigators engaged in undercover operations and interviewed cooperating defendants to identify the source and distribution chain of heroin being sold in the area. Id. Edward Maurice Singleton ("Singleton") emerged as a major heroin dealer, and investigators obtained a Title III wiretap for Singleton's phone. Id. ¶¶ 9–10. Singleton's phone calls and messages revealed that Shannon was the source Singleton's heroin. Id. ¶ 12. Investigators then arranged for a confidential informant to purchase heroin from Shannon on March 6, 2010. Id. ¶ 13. The confidential informant successfully purchased two bindles of heroin from Shannon totaling 0.06 grams. Id. ¶ 15.

Shannon was amenable to the confidential informant's request to purchase more heroin in the future.  Id. ¶ 14.

On February 13, 2014, investigators intercepted a phone call between Shannon and Singleton during which Shannon stated "[a]in't no one going to beat me out" in reference to his heroin being the highest quality in the area.  Id. ¶ 20.  Subsequent conversations between Shannon and Singleton revealed that Shannon would travel by train from New York City to South Carolina with a fresh supply of heroin on February 27, 2014.  Id. ¶ 21.  On that day, investigators observed Shannon disembarking from the train at the Amtrak Station in Kingstree, South Carolina and getting into a gold Tahoe driven by Stevenson Snider ("Snider").  Id.  Investigators knew from intercepted phone calls that Shannon planned to meet Singleton at a store on Durant Avenue in North Charleston the following day.  Id. ¶ 22.  Investigators watched Snider drive Shannon to the store in the same gold Tahoe investigators had seen the day before.  Id. ¶¶ 22–23.  When a police officer pulled into the parking lot behind the Tahoe, it then pulled away.  Id.  Subsequently, the officer pulled the Tahoe over for an improperly displayed license tag.  Id.  Snider stepped out of the vehicle at the officer's request and consented to have the vehicle searched.  Id. ¶ 23.  At the same time, Shannon jumped into the driver's seat and fled the scene.  Id.  The police initially pursued Shannon but terminated their pursuit upon learning that Snider's eight-month-old child was in the backseat of the car.  Id. ¶ 24.

A concerned citizen notified police that a baseball-sized bag containing two grams of heroin had been thrown from the Tahoe after it pulled away from the traffic stop.  Id. ¶ 25.  Shannon was then located and arrested with a small quantity of marijuana on his person.  Id. ¶ 26.  A search warrant was executed on Shannon's residence

revealing a number of items related to drug trafficking including scales and bindle bags as well as twelve bundles of heroin totaling 3.6 grams.  Id. ¶¶ 27–28.

Shannon continued to place phone calls to Singleton even after his arrest.  Id. ¶¶ 29–30.  During one of these phone calls, Shannon informed Singleton that he had thrown a box containing heroin into a ditch near a Bojangles and hoped that Singleton would retrieve the heroin.  Id.  Using this information, investigators located a small cardboard box containing 538 bindles of heroin weighing nine grams.  Id. ¶¶ 31, 34.  Singleton provided information against Shannon that described their drug dealing arrangement.  Id. ¶ 35.  According to Singleton, between January and June 2012, Shannon provided him with roughly forty bundles of heroin twice a week weighing an estimated total of 480 grams.  Id. ¶ 37.  Between June and December 2012 as well as March and November 2013, Shannon supplied Singleton with approximately eighty to one hundred bundles of heroin twice a week weighing an estimated total of 2,688 grams.  Id.

### B.  Procedural History

On August 12, 2014 an arrest warrant was issued for Shannon's arrest.  ECF No. 39.  On that same day, a grand jury returned a superseding indictment that added Shannon as a defendant to an indictment that originally charged Singleton and other co-defendants with a single count of conspiracy to possess more than one kilogram of heroin with the intent to distribute as prohibited by 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. See ECF Nos. 28, 1494 at 4.  A second superseding indictment was returned on September 10, 2014 that added substantive counts to the indictment.  ECF No. 51.  Shannon was charged in Count 2 with possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Id.  Count 20 charged Shannon with

3

possessing more than one hundred grams heroin with the intent to distribute under 21 U.S.C. § 841(a)(1) and (b)(1)(B).  Id.  Additionally, Shannon was charged in Counts 32, 39, 40, and 47 with using a communication facility to facilitate a drug trafficking crime in violation of 21 U.S.C. § 843(b).  Id.

The United States of America (the "government") filed an Information (the "851 notice") pursuant to 21 U.S.C. § 851 notifying Shannon that the government intended to use four of his prior convictions as the basis for enhancing Shannon's sentence.  ECF No. 614.  The 851 notice stated that Shannon faced a mandatory minimum sentence of life pursuant to the then-current version of 21 U.S.C. § 841(b)(1)(A) if convicted on Count 1. Id.

Shannon entered a plea of not guilty, ECF No. 44, declined a plea offer, and went to trial.  See ECF No. 856.  During Shannon's trial, and just as Singleton was about to offer testimony that Shannon was his former supplier, Shannon erupted in the courtroom, posing a safety issue for jurors, witnesses, and court personnel.  See ECF No. 857 at 59–89.  Marshals had to forcibly restrain Shannon and remove him from the courtroom.  See id. at 60–61.  Shortly thereafter, Shannon returned to the courtroom and, after a discussion with the court, agreed to refrain from further outbursts for the remainder of his trial.  ECF No. 857 at 69.  The jury convicted Shannon on all counts and specifically found that the conspiracy in Count 1 involved more than one kilogram of heroin.  ECF Nos. 671, 672. The weight of heroin involved in the conspiracy combined with Shannon's prior convictions contained in the 851 notice meant that Shannon was subject to an enhanced mandatory minimum of life in prison under 21 U.S.C. § 841(b)(1)(A). See ECF No. 671; PSR ¶ 104.  The court thus sentenced Shannon to life in prison

4

pursuant to the statutory mandatory minimum on August 1, 2017, and he has been serving his life sentence ever since.  See ECF Nos. 915, 916.

On November 11, 2024, Shannon filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) seeking a reduction in his sentence to 168 months or time-served, whichever is shorter.  ECF Nos. 1486, 1499 at 1.  Subsequently, on November 14, 2024, the court entered an order appointing counsel to represent Shannon on his motion.  ECF No. 1487.  The government responded in opposition to Shannon's motion on January 30, 2025.  ECF No. 1494.  Shannon filed a reply with the assistance of counsel on April 30, 2025.  ECF No. 1499.  As such, this motion is fully briefed and ripe for the court's review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed . . . ."  18 U.S.C. § 3582(c).  There is an exception to this general rule when "extraordinary and compelling reasons warrant such a reduction[.]"  § 3582(c)(1)(A).  Courts refer to requests under this section as motions for "compassionate release."  E.g., United States v. Turnipseed, 576 F. Supp. 3d 344, 346 (D.S.C. 2021).  Prior to the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons (the "BOP") to file motions for compassionate release.  United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016).  Section 603 of the FSA amended section 3582(c)(1)(A) to authorize defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies.  First Step Act, § 603(b), 132 Stat. 5194, 5239.  In order to meet this exhaustion prerequisite, the defendant must have (1) "fully exhausted all

administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[,]" or (2) the defendant must have requested compassionate release from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." § 3582(c)(1)(A).

If the defendant meets this procedural hurdle, then courts engage in a two-step inquiry in considering whether to grant compassionate release motions. United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024). First, the court determines whether "extraordinary and compelling reasons" exist that warrant a sentence reduction and whether "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" § 3582(c)(1)(A). Second, if the court finds that circumstances indeed warrant a reduction in a defendant's sentence, it must turn to the factors set forth in 18 U.S.C. § 3553(a) to determine whether such a reduction is justified. Id. A defendant seeking compassionate release bears the burden of proving that such relief is warranted. Centeno-Morales, 90 F.4th at 279.

## III.   DISCUSSION

As a preliminary matter, the court first discusses whether Shannon meets the exhaustion requirement under section 3582(c)(1)(A) before turning to the two-step inquiry for compassionate release motions. In Shannon's initial pro se motion for compassionate release, Shannon represents that he filed an "inmate request to staff" form on November 16, 2023 requesting compassionate release from the warden of his facility and received no response. ECF No. 1486 at 6. The government disputes that Shannon has exhausted his administrative remedies because it has no record of his request for a reduction. ECF No. 1494 at 9 n.4. In his reply, Shannon attaches a supplementary

exhibit confirming that he made a request to the warden of his facility for compassionate

release on November 16, 2023.  ECF No. 1501-1.  This exhibit presents a sufficient basis

for the court to find that Shannon requested compassionate release from the warden of his

facility and received no response within thirty days making this motion procedurally

sound under section 3582(c)(1)(A).  The court now turns to the first step of the

compassionate release analysis.

### A.  Extraordinary and Compelling Reasons

The determination of whether "extraordinary and compelling reasons" exist and

warrant relief is within the discretion of the district court.  Centeno-Morales, 90 F.4th at

2024; United States v. Griggs, 462 F. Supp. 3d 610, 617 (D.S.C. 2020).  This

determination must be consistent with applicable policy statements issued by the United

States Sentencing Commission (the "Sentencing Commission").  § 3582(c)(1)(A).  Until

recently, however, the Sentencing Commission did not have a quorum, and as a result,

there were no applicable policy statements to reference.  United States v. McCoy, 981

F.3d 271, 282 n.6 (4th Cir. 2020).  Consequently, in McCoy, the Fourth Circuit

empowered district courts "to consider any extraordinary and compelling reason for

release that a defendant might raise."  981 F.3d at 284 (emphasis in original) (citation

omitted).

In May 2023, the Sentencing Commission promulgated new amendments to guide

courts as to whether extraordinary and compelling reasons warrant a sentence reduction.

88 Fed. Reg. 28254 (May 3, 2023).  As a result, the Fourth Circuit overturned McCoy

and instructed district courts to determine whether extraordinary and compelling reasons

warrant a sentence reduction in light of the new Sentencing Commission guidance.

United States v. Davis, 99 F.4th 647, 654–55 (4th Cir. 2024). Nevertheless, while the court's determination is ultimately controlled by section 3582(c)(1)(A) and the corresponding guidance promulgated by the Sentencing Commission, it remains appropriate to consider the Fourth Circuit's reasoning in McCoy. United States v. Dire, 749 F. Supp. 3d 620, 628 (E.D. Va. 2024).

The new Sentencing Commission guidance provides that a defendant's "unusually long sentence" can be an extraordinary and compelling reason for a sentence reduction in certain circumstances:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2024). Put another way, this section permits compassionate release when a defendant meets three requirements:

> "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)" may constitute "an extraordinary and compelling reason" for a reduction if (1) the defendant received "an unusually long sentence," (2) the defendant has served "at least 10 years of the term of imprisonment," and (3) the change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

United States v. Johnson, 2024 WL 3451612, at *3 (D.S.C. July 17, 2024) (quoting U.S.S.G. § 1B1.13(b)(6)). The court will first determine how relevant changes in the law could result in a different sentence for Shannon if he were resentenced today. The court will then discuss each of the three requirements outlined above to determine whether the

relevant changes in the law make Shannon's current sentence an "extraordinary and compelling reason" for a sentence reduction.

### 1. Relevant Changes in the Law

#### a. Shannon's Statutory Mandatory Minimum

The government and Shannon disagree over the extent to which changes in the law enacted since Shannon's conviction would alter his statutory mandatory minimum if his sentencing were to take place today. See ECF Nos. 1494 at 15, 1499 at 8.

Beginning with Shannon's current sentence, the jury determined that Shannon's 21 U.S.C. § 841(a)(1) violation involved more than one kilogram of heroin, triggering the potential for enhanced penalties under section 841(b)(1)(A)(i). ECF No. 671 at 1–2. As section 841(b)(1)(A) was written at the time, a defendant with one prior "felony drug offense" was subject to a mandatory minimum of twenty years, and a defendant with two or more prior "felony drug offense[s]" was subject to a mandatory minimum of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (2012). An enhanced penalty is not automatic, however. Before the entry of a guilty plea or before trial, the government must file an "information" pursuant to 21 U.S.C. § 851(a)(1) stating the previous convictions to be relied upon for purposes of enhancing a defendant's sentence.

On June 13, 2016, the government filed an 851 notice to notify Shannon of the four prior convictions it intended to use for purposes of enhancing Shannon's sentence as allowed under section 841(b)(1)(A). ECF No. 614. Shannon's prior convictions listed in the 851 notice are as follows:

> (1) a 1989 conviction from Washington D.C. for possession of cocaine carrying a one year sentence (the "Washington D.C. conviction");

(2) a 1991 conviction from New York for possession of heroin carrying a sixteen month sentence (the "New York conviction");

(3) a 1995 conviction from Charleston County, South Carolina for conspiracy to violate narcotics laws (Indictment No. 91-GS-10-3115) (the "Charleston conspiracy offense");[1] and

(4) another 1995 conviction from Charleston County for possession of heroin with the intent to distribute (Indictment No. 94-GS-10-4506) (the "1995 Charleston heroin conviction").

ECF No. 614 at 1; see also PSR ¶¶ 57, 59–61.  Because Shannon had at least two prior convictions for "felony drug offense[s]", as the term was defined in August of 2017, he was sentenced to the statutory mandatory minimum of life as required by section 841(b)(1)(A) on July 1, 2017.  See PSR ¶ 104; ECF No. 915 at 2; ECF No. 916 at 1.

Not long after Shannon's conviction, in December of 2018, Congress passed the FSA amending 21 U.S.C. § 841(b)(1)(A) such that only a prior "serious drug felony"—as opposed to merely a "felony drug offense"—may now serve as the basis for enhancing a defendant's conviction under section 841.  First Step Act, § 401(a)(2), 132 Stat. 5194, 5220.  For a conviction to qualify as a "serious drug felony[,]" the offender (1) must have served more than twelve months for the offense, and (2) the offender's date of release must be within fifteen years of the commencement of the instant offense.  21 U.S.C. § 802(58).  The FSA also decreased the mandatory minimum sentences provided under section 841(b)(1)(A) to fifteen years for one prior conviction for a "serious drug felony" and twenty-five years for two prior convictions.  First Step Act, § 401(a)(2), 132 Stat. 5194, 5220.  The gist of Shannon's motion for compassionate release is that, had he been

---

[1] The 851 notice filed by the government describes the offense with the indictment number 91-GS-10-3115 as being for "possession with intent to distribute cocaine[,]" ECF No. 614 at 1, but the PSR states that this same indictment number corresponds to the crime of "Conspiracy to Violation SC Narcotic Laws[.]"  PSR ¶ 59.

10

convicted after the FSA's enactment, he would have been subject to a lower statutory mandatory minimum than the mandatory life sentence he received at the time of his conviction. ECF No. 1499 at 6–8. Thus, in Shannon's view, these developments in the law suggest that his current sentence is "unusually long" as contemplated under U.S.S.G. § 1B1.13(b)(6).

Shannon argues that his statutory mandatory minimum would only be fifteen years under the current version of section 841(b)(1)(A), and the government argues his minimum sentence would actually be twenty-five years. Id.; ECF No. 1494 at 14–15. The government concedes that neither the Washington D.C. conviction nor the New York conviction listed in the 851 notice would qualify today as a sentence enhancing "serious drug felony" because Shannon was released more than fifteen years after the commencement of the instant offense. See ECF No. 1494 at 11–12. However, the government argues that two of Shannon's other prior convictions would still qualify as "serious drug felon[ies.]" Id. at 12. The first conviction the government points to is Shannon's 1995 Charleston heroin conviction (Indictment No. 94-GS-10-4506) that is found in paragraph (d) of the 851 notice. Id.; ECF No. 614. The government also points to Shannon's 1995 conviction from Charleston County for possession of heroin with the intent to distribute in proximity of a school (Indictment No. 94-GS-10-4507),[2] but

---

[2] The government's response in opposition assigns the indictment number 94-GS-10-4506 to both the possession of heroin with the intent to distribute offense and the possession of heroin with the intent to distribute in proximity of a school offense. ECF No. 1494 at 12. However, the PSR states that the distribution in proximity of a school offense corresponds to an indictment number of 94-GS-10-4507 while the charge for possession with the intent to distribute corresponds to the indictment number 94-GS-10-4506. PSR ¶ 61. The court identifies each offense using the indictment numbers found in the PSR.

notably, this conviction is not listed in the 851 notice. ECF No. 1494 at 12; <u>see</u> ECF No. 614.

The government also argues that Shannon's numerous prior convictions stemming from conduct in Berkeley County, South Carolina in 1996 would provide sufficient grounds for enhancing his sentence today. ECF No. 1494 at 12. According to the government, these convictions were for (1) possession of heroin with the intent to distribute (Indictment No. 95-GS-08-4-339), (2) possession of crack cocaine with the intent to distribute (Indictment No. 94-GS-08-4-1627), (3) and possession of crack cocaine with the intent to distribute in proximity of a school (Indictment No. 94-GS-08-4-1626) (collectively, the "Berkeley County offenses"). <u>Id.</u> The government asserts that Shannon was sentenced to fifteen years "on each indictment" and was released on March 2, 2003 but provides no citation for this assertion. <u>Id.</u> Notably, these Berkeley County offenses are not contained in the 851 notice. <u>See</u> ECF No. 614. The government claims that all of the offenses provided in its brief could be used to enhance Shannon's sentence even under the current version of section 841(b)(1)(A). ECF No. 1494 at 12. This is because Shannon was released from prison in 2003, well-within the fifteen year time period required for a prior conviction to qualify as a "serious drug felony" if Shannon's current sentence stems from conduct taking place in 2014. <u>Id.</u> Because Shannon would still have two or more convictions that qualify as "serious drug felon[ies]" if sentenced today, the government asserts that Shannon's mandatory minimum sentence today would be twenty-five years. <u>Id.</u> at 15.

Shannon disagrees for multiple reasons. First, he contends that his 1995 Charleston conspiracy offense (Indictment No. 91-GS-10-3115), listed in paragraph (b)

of the 851 notice, "is not—and never has been—a conviction."[3] ECF No. 1499 at 6; ECF No. 614 at 1. Shannon attaches an "indictment status change form" to his reply brief demonstrating that the state declined to prosecute this offense.[4] ECF No. 1499-1 at 3. Importantly, Shannon did object to the government's inclusion of the Charleston conspiracy offense in the 851 notice as required by section 851(c)(1). ECF No. 782. Moreover, Shannon's sentencing memorandum notes that "[t]he government did not object to the determination that [the Charleston conspiracy offense and Washington D.C. conviction] do not qualify for purposes of enhancement." ECF No. 905 at 3. As a result, the court finds that Charleston conspiracy offense could not be used for purposes of enhancing Shannon's sentence today.

Shannon also argues that the Berkeley County offenses and his indictment for distributing heroin in proximity of a school (Indictment No. 94-GS-10-4507) cannot be used to enhance his sentence today for two reasons. Id. at 7. First, with respect to his 1995 indictment for distributing heroin in proximity of a school (Indictment No. 94-GS-10-4507), Shannon contends that indictment did not result in a conviction. Id. Shannon attaches another "indictment status change form" to his reply brief showing that the state declined to prosecute this indictment.[5] ECF No. 1499-2.

---

[3] Despite this offense being listed in the 851 notice, the government did not argue in its response in opposition that it could serve as a predicate for enhancing Shannon's sentence if convicted today. See ECF No. 1494. And perhaps for good reason if the offense never actually resulted in a conviction. Instead, the government points to Shannon's numerous convictions that are not to be found in the 851 notice. Id. at 12.

[4] The documentation Shannon provides as evidence of the lack of a conviction lists "Kevin Sanders" as the defendant, and the PSR confirms that Shannon used this name as an alias. PSR ¶ 1.

[5] Again, this form uses Shannon's known alias—Kevin Sanders.

Second, with respect to the remaining Berkeley County offenses, Shannon emphasizes that they are not contained in the government's 851 notice.[6] Id. at 7. In Shannon's view, no conviction can serve as the basis for a sentencing enhancement under section 841(b)(1)(A) unless the government adheres to section 851's notice requirements. Id. Section 851(a)(1) provides that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before the entry of a plea of guilty, the United States attorney files an information with the court[.]" 21 U.S.C. § 851(a)(1). The Supreme Court has confirmed that "imposition of an enhanced penalty is not automatic. Such a penalty may not be imposed unless the government files an information notifying the defendant in advance of trial (or prior to the acceptance of a plea) that it will rely on defendant's prior convictions to seek a penalty enhancement." United States v. LaBonte, 520 U.S. 751, 754 n.1 (1997) (citing § 851(a)(1)). The court agrees with Shannon on this point and finds that that the Berkeley County offenses could not serve as predicate offenses to enhance Shannon's sentence if convicted today as they are not contained in the government's 851 notice.

However, Shannon concedes that his 1995 Charleston heroin conviction (Indictment No. 94-GS-10-4506)—the only remaining conviction contained in the 851 notice—would qualify as a serious drug felony for purposes of a sentencing enhancement were he to be sentenced today. ECF No. 1499 at 6–7.

---

[6] Again, these convictions were for (1) possession of heroin with the intent to distribute (Indictment No. 95-GS-08-4-339), (2) possession of crack cocaine with the intent to distribute (Indictment No. 94-GS-08-4-1627), (3) and possession of crack cocaine with the intent to distribute in proximity of a school (Indictment No. 94-GS-08-4-1626). ECF No. 1494 at 12; PSR ¶ 62.

In sum, the only conviction that could serve as a predicate for enhancing Shannon's sentence today—as it is listed on the 851 notice and would qualify as a "serious drug felony" under the current version of section 841(b)(1)(A)—would be Shannon's 1995 Charleston heroin conviction (Indictment No. 94-GS-10-4506). Therefore, if the court were to sentence Shannon today under the current version of section 841(b)(1), his mandatory minimum sentence with only one predicate "serious drug felony" would be fifteen years or 180 months. See § 841(b)(1); see also § 802(58).

### b.  Shannon's Sentencing Guidelines Range[7]

The government and Shannon also take different views on what Shannon's current guidelines range would be if he were sentenced today.  The government asserts that Shannon's sentencing guideline range at the time of his conviction was life because Shannon was a "career offender with an offense level of thirty-seven (37)."  ECF No. 1494 at 13.  Shannon counters that although his guideline range was life when he was convicted, that range applied because his statutory mandatory minimum was life—not because of his career offender status—as confirmed by the PSR.  PSR ¶ 105; see also U.S.S.G. § 5G1.1(b).

---

[7] This sub-section of the court's order discussing Shannon's new guidelines range if sentenced today uses the United States Sentencing Guidelines from 2016 that were in place at the time of Shannon's conviction because the Sentencing Commission's policy statement that governs the compassionate release determination does not allow for a court to consider "an amendment to the guidelines manual that has not been made retroactive" to determine whether an "unusually long sentence" warrants a reduction in sentence. U.S.S.G. § 1B1.13(b)(6).  Consequently, the court must use the guidelines in place at the time Shannon was convicted but will consider how any change in the law enacted after Shannon's conviction would alter his guidelines range under the 2016 sentencing guidelines.  All citations to the sentencing guidance in this section of the court's order are thus to the 2016 sentencing guidelines that can be referenced using the following link: https://www.ussc.gov/guidelines/guidelines-archive/2016-guidelines-manual.

The government also claims that Shannon's guidelines range today—based upon a total offense level of 37 and a criminal offense category of VI—would still be life even though his mandatory minimum sentence would no longer be life. ECF No. 1494 at 15. Based upon these same inputs—including his designation as a career offender—Shannon calculates his guideline range today as 360 months to life. ECF No. 1499 at 9. After reviewing the relevant guidelines, the court finds that Shannon's guidelines range if sentenced today would indeed be 360 months to life based upon an offense level of thirty-seven and a criminal history category of VI.

Although Shannon correctly determines his guidelines range to be 360 months to life if designated a career offender, Shannon also suggests various alternative methods of calculating his guidelines range that yield a lower range. Id. at 10 & n.8, 14–15, 17–18. For instance, Shannon reaches a guidelines range of 262 to 327 months if he was not subject to any sentencing enhancement. Id. at 15. Shannon reaches this result because the longest possible statutory maximum sentence of all counts the defendant is convicted of drives the defendant's offense level if they are a career offender. See U.S.S.G. § 4B1.1(b). But Shannon's longest statutory maximum penalty is still life on Count 1— entering into a conspiracy to distribute heroin in violation of 21 U.S.C. § 846 in an amount greater than one kilogram as prohibited under section 841(b)(1)(A)(i)—even without any sentencing enhancement. See 21 U.S.C. § 841(b)(1)(A). Shannon contends, however, that conspiracy to violate section 841 (as specifically proscribed by section 846) cannot serve as a predicate offense to career offender designation due to the Fourth Circuit's holding in United States v. Norman that precluded some conspiracy offenses from serving as predicates to career offender designation. 935 F.3d 232 (4th Cir. 2019).

To be a career offender under the sentencing guidelines in place at the time Norman was decided,[8] the "instant offense" must be a felony conviction for a "crime of violence or controlled substance offense[]" and the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  Thus, the instant offense and the two prior convictions all must qualify as either a "controlled substance offense" or a "crime of violence."  Id.  The Norman court held that a conviction for "conspiracy" as used in section 846 (criminalizing, inter alia, entering into a conspiracy to violate section 841) is a broader term than "conspiring" as used in U.S.S.G. § 4B1.2(b) that defines "controlled substance offense" because conspiring to commit a controlled substance offense requires an overt act while conspiracy to violate section 841 does not require an overt act.  935 F.3d at 237–38.  Therefore, some of the conduct that constitutes conspiracy to violate section 841 (e.g., conduct amounting to a conspiracy even in the absence of an overt act) is not always sufficient to constitute a conspiracy to commit a "controlled substance offense[.]" Id.  As a result, Shannon's conspiracy conviction on Count 1, under Norman's rationale, cannot serve as the instant "controlled substance offense" for purposes of career offender designation.

Shannon then moves to Count 20—distribution of heroin in violation of section 841(a)(1) in an amount exceeding one hundred grams in violation of section

---

[8] Norman was decided on August 15, 2019, see 935 F.3d 232, when the 2018 sentencing guidelines were effective while Shannon was sentenced in 2017 when the 2016 sentencing guidelines were effective.  However, the relevant provisions of the sentencing guidelines defining "career offender" and "controlled substance offense"— U.S.S.G. §§ 4B1.1 & 1.2—were identical in both the 2018 and 2016 sentencing guidelines making Norman's holding applicable to the guidance in place at the time of Shannon's conviction.

841(b)(1)(B)(i)—which would qualify as a "controlled substance offense" and constitute his next longest statutory maximum at forty years <u>without any consideration of a sentencing enhancement</u>.[9] ECF No. 1499 at 15. Using this unenhanced, lower maximum penalty drives Shannon's offense level as a career offender down to thirty-four resulting in a lower guidelines range. <u>See</u> U.S.S.G. § 4B1.1(b).

But of course, the premise of Shannon's calculation is that he <u>should not</u> be subject to a sentence enhancement. ECF No. 1499 at 14–15. In support of this view, Shannon cites to statistics demonstrating that enhanced penalties sought under section 851 have resulted in "widely disparate" charging practices across the country. <u>Id.</u> at 13. Shannon further protests the government's use of section 851 enhancement in his case, and others, describing it as "a <u>de facto</u> punishment for not cooperating[.]" <u>Id.</u> While Shannon may not agree with section 851 as a policy matter, that does not provide a valid basis for the court to disregard it. As stated <u>supra</u> p. 15, if Shannon were sentenced today, the government's 851 notice would still contain one prior conviction that constitutes a "serious drug felony" resulting in a sentence enhancement on Count 20 that would carry a statutory maximum of life imprisonment in addition to a mandatory minimum sentence of fifteen years. <u>See</u> 21 U.S.C. § 841(b)(1)(B); <u>see also</u> <u>supra</u> p. 18 n.9. Therefore, even if the court were to disregard Count 1 as a possible predicate "controlled substance offense" due to the Fourth Circuit's decision in <u>Norman</u>, Shannon's

---

[9] Section 841(b)(1)(B) provides that if a person violates section 841(a) in a manner that involves "100 grams or more of a mixture of substance containing a detectable amount of heroin[,]" then that person "shall be sentenced to a term of imprisonment . . . not more than 40 years" or "[i]f any person commits such violation after a prior conviction for a serious drug felony[,] . . . such person shall be sentenced to a term of imprisonment . . . not more than life imprisonment . . . ." 21 U.S.C. § 841(b)(1)(B).

guidelines range would be unchanged because Count 20, after enhancement, still carries a maximum sentence of life resulting in an offense level of thirty-seven and a guidelines range of 360 months to life.

Shannon also attacks the two prior convictions that qualified him for career offender designation arguing they should have been counted together as one prior conviction. ECF No. 1499 at 17–18. If Shannon were correct, he could avoid career offender designation altogether and his criminal history category would drop from VI to III. See U.S.S.G. § 4B1.1(a)–(b) (requiring two prior felony "controlled substance offense[s]" for career offender designation); see also PSR ¶ 91. By Shannon's calculation, this downgrade to his criminal history category results in a substantially lower guidelines range of 168 to 210 months. ECF No. 1499 at 17. The two convictions that Shannon takes issue with counting separately resulted from conduct that occurred on the same day, August 1, 1994, and in the adjacent Charleston and Berkeley counties. ECF No. 1499 at 17; PSR ¶¶ 61–62. Counting the convictions separately strikes Shannon as unfair because he "likely never left custody after his initial arrest by Charleston authorities, even though he was 'rearrested' by Berkeley County authorities . . . ." ECF No. 1499 at 17. Moreover, Shannon also points out that, at the time of sentencing, he "raised several mitigation arguments which this [c]ourt could not consider because it had to apply the statutory mandatory minimum." Id.

U.S.S.G. § 4A1.2(a)(2) prescribes the standard to ascertain whether prior convictions should be counted separately or as one conviction. It first states that "[p]rior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest i.e., the defendant is arrested for the first offense

19

prior to committing the second offense." U.S.S.G. § 4A1.2(a)(2). In the absence of an intervening arrest, prior sentences are counted separately unless the sentences are "contained in the same charging instrument[,]" or "sentence is imposed on the same day." Id. Here, the offenses cannot be separated by an intervening arrest because the convictions resulted from conduct that occurred on the same day. See PSR ¶¶ 61–62. The charges also cannot be contained in the same charging instrument because the charges were brought in separate counties. See id. Lastly, the sentences were not imposed on the same day because Shannon's Charleston County sentencing took place on February 9, 1995, and Shannon's Berkeley County sentencing took place on December 10, 1996. See id. Therefore, even if the court had been able to entertain arguments in favor of counting the sentences separately at the time of sentencing, those arguments would have failed because the then-current version of the sentencing guidelines mandated counting the convictions separately.

In sum, if Shannon were re-sentenced today his statutory mandatory minimum would be fifteen years and his guidelines range would be 360 months to life. With the impact of changes in the law on Shannon's sentence and guidelines range identified, the court now turns to whether these changes constitute an extraordinary and compelling reason for a reduction in sentence.

### 2. Unusually Long Sentence

Shannon argues that his sentence is "unusually long" as contemplated under U.S.S.G. Section 1B1.13(b)(6). ECF No. 1499 at 8. The sentencing guidelines do not define "unusually long sentence," but Shannon notes that courts have followed a variety of approaches to make this determination. Id. at 9–10. One court has looked at the

defendant's total sentence after accounting for changes in the law and determined what percentage of that sentence is attributable to charges that would actually be reduced due to the changes in the law. United States v. Ware, 720 F. Supp. 3d 1351, 1362–63 (N.D. Ga. 2024). The court then compared that percentage to the percentage those same charges comprised of the total sentence before any changes in the law, thus, demonstrating the impact of changes in the law on the defendant's overall sentence. Id. The United States District Court for the District of Maryland has compared the defendant's existing sentence to the defendant's modified guidelines range after a change in the law. United States v. Millner, 2024 WL 1678559, at *2–3 (D. Md. Apr. 18, 2024). This same court in another case has also assessed national sentencing statistics to ascertain whether a defendant is serving a sentence that is "unusually long." United States v. Howard, 2024 WL 112010, at *16 (D. Md. Jan. 10, 2024). Shannon contends that his sentence qualifies as unusually long under any of these approaches. ECF No. 1499 at 9–10.

The government argues that Shannon's sentence is not unusually long because a life sentence would still be permissible under the current version of section 841(b)(1)(A) even though a life sentence would no longer be the mandatory minimum.[10] ECF No. 1494 at 13. The government also contends that Shannon received his mandatory minimum sentence of life pursuant to section 841 as it was then-written, and any other

---

[10] As discussed supra p. 18, even if the court were to disregard Count 1 in calculating his guidelines range under Norman's rationale, Shannon would still be subject to a statutory maximum of life on that charge. Shannon only suggests disregarding Count 1 for purposes of career offender designation but that would not alter the statutory maximum associated with Count 1 after applying the sentencing enhancement associated with one prior "serious drug felony." See 21 U.S.C. § 841(b)(1)(A).

defendant with two qualifying "felony drug offenses" (as did Shannon) also received that same sentence pursuant to the statute.  Id.  In other words, Shannon's sentence is not unusually long in the government's view because it was "not distinct from nor longer than sentences received by defendants convicted of violating [section] 841 with multiple enhancing felony drug offenses."  Id.

      The court agrees with Shannon.  It is true that the court was required to sentence all defendants with two or more qualifying "felony drug offense[s]" to a mandatory life sentence under section 841 as it existed at the time of Shannon's conviction.  It is also true that courts in this circuit have reached very different conclusions in determining the point of comparison when deciding whether a prisoner's sentence is "unusually long."  See, e.g., United States v. Scott, 2025 WL 2051153, at *2 n.2 (E.D. Va. July 22, 2025); United States v. Martin, 2025 WL 1092723, at *5 n.7 (M.D.N.C. April 11, 2025); United States v. Johnson, 2024 WL 3451612, at *4 (D.S.C. 2024 July 17, 2024).  That being said, in a very similar case, the United States District Court for the Eastern District of Virginia recently determined that, "[g]iven the rarity of life sentences," a prisoner was serving an unusually long sentence when changes in the law would no longer require imposition of a life sentence.  See Kelly v. United States, 2025 WL 1651906, at *4 n.4 (E.D. Va. June 10, 2025) (noting that "[s]entences of life imprisonment account for 'less than 1% of the federal sentencing caseload'" (citation omitted)).  Adopting the reasoning of that court, this court finds that Shannon received an unusually long sentence because his statutory mandatory minimum would only be fifteen years under the current law.

### 3. Served At Least Ten Years

There is no dispute that Shannon meets the requirement that the defendant must have served at least ten years of their sentence to be eligible for compassionate release under section 1B1.13(b)(6) of the guidelines. ECF Nos. 1494 at 11 n.6, 1499 at 5.

### 4. Gross Disparity

The government argues that Shannon cannot meet the gross disparity requirement because his guidelines range as well as section 841(b)(1)(A) and (b)(1)(B) would still allow for the imposition of a maximum sentence of life; it just would not be required today. ECF No. 1494 at 15. In other words, the government does not think a gross disparity exists when the "minimum has changed but the maximum remains the same and the defendant's sentence is within the range of the maximum." Id. Shannon counters that a mandatory minimum sentence of life is grossly disproportionate to any sentence that is less than life. ECF No. 1499 at 11.

The court agrees with Shannon that a prisoner's actual sentence is grossly disproportionate to the sentence they would receive today when the prisoner would no longer be subject to a mandatory minimum of life. The court in Kelly reached the same conclusion and explained that "the disparity 'between a life sentence and any sentence less than life is glaringly noticeable[]'" and is therefore grossly disparate. 2025 WL 1651906, at *4 (quoting United States v. Allen, 717 F. Supp. 3d 1308, 1316 (N.D. Ga. 2024). The court also reasoned that while "it [was] possible that Petitioner would be sentenced to life in prison if were sentenced today[,] . . . it is not likely." Kelly, 2025 WL 1651906, at *4 (emphasis in original). Thus, the court found that the defendant's mandatory life sentence was grossly disparate from what he likely would have received if

resentenced even though his guidelines range still included a life sentence.  Id.  Shannon

finds himself in the same scenario.  His recalculated guidelines range is 360 months to

life, which leaves open the possibility of a life sentence, and his statutory minimum is

now fifteen years instead of life.  Adopting the reasoning of Kelly, the court finds that

there is a gross disparity between Shannon's life sentence and the sentence that he would

likely receive today because, even though a life sentence would be possible, it is not

likely.  Therefore, Shannon has shown that he is serving unusually long sentence that

may constitute an extraordinary and compelling reason for a reduction in his sentence if

the factors in 18 U.S.C. § 3553(a) also favor a reduction in sentence.

### B.  Section 3553(a) Factors

The court will now analyze the factors set forth in 18 U.S.C. § 3553(a) to

determine whether such a reduction is justified.  Section 3553(a) requires a court "impose

a sentence sufficient, but not greater than necessary" by considering the following

factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)  the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
>> . . . .
> (5) any pertinent policy statement--
>> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The government argues that, even if Shannon has demonstrated extraordinary and compelling reasons for release, the section 3553(a) factors weigh against granting his motion. ECF No. 1494 at 17. As for the nature and circumstances of the offense, the government emphasizes that Shannon engaged in a conspiracy to distribute over a kilogram of heroin while overdose deaths were on the rise in the Charleston area. Id. Not only that, but Shannon also forced police to engage in a high-speed chase shortly before his arrest while an eight-month-old child was in backseat of the vehicle. Id. The government also argues that Shannon's history and characteristics do not favor a reduction in sentence in light of his lengthy criminal record that includes twenty-three convictions arising out of eighteen criminal incidents. Id. While many of these convictions are for relatively minor offenses, some of his prior convictions are for serious drug offenses including a 1987 conviction for possession of cocaine, a 1991 criminal possession conviction, and the convictions from 1995 and 1996 that relate to the sale of heroin and crack cocaine with the intent to distribute and within proximity of a school. Id. at 17–18.

The government further notes that Shannon's behavior at trial is a strong indicator of his disrespect for the law. Id. at 18. The government views Shannon's outburst at trial as an attempt to intimidate Singleton, his former drug dealing associate, shortly before Singleton was to offer testimony against Shannon. Id. Regardless of Shannon's motivations, this outburst certainly reflected a lack of respect for the law, the court, and court personnel. Given Shannon's disrespect for the law, the government believes that

25

Shannon's current sentence is necessary to "to afford adequate deterrence to criminal conduct." Id. (quoting 18 U.S.C. 3553(a)(2)(B)).

The government also notes that Shannon's current sentence does not reflect an unwarranted disparity between his sentence and that of others because Shannon's sentence of life is still within his guidelines range of 360 months to life if he were to be sentenced today. Id. at 19. Most importantly, the government contends that Shannon would pose a danger to the public if he were ever released because his adult-life presents an unbroken chain of criminal activity. Id. at 19. The government acknowledges Shannon's exemplary behavioral record in prison but worries that Shannon would not do as well without and the structure and limitations of a penitentiary facility. Id.

Shannon, for his part, makes no attempt to downplay the seriousness of his offenses and acknowledges that his distribution of narcotics coincided with an increase in overdose deaths in the Charleston area. ECF No. 1499 at 16. However, Shannon contends that these deaths should not be used in evaluating the section 3553(a) factors because the jury never heard any evidence that his actions caused any of these deaths. Id. Rather, Shannon emphasizes that "reckless endangerment," stemming from his high-speed chase, was the only enhancement to his guidelines. Id. Shannon also concedes that his outburst at trial was "unfortunate" but notes that he maintained his composure throughout the remainder of the trial after a discussion with the court. Id. at 19.

Shannon feels that his unblemished disciplinary record carries more weight than the government gives him credit for because he has demonstrated exemplary behavior without any incentive to earn "Good Time Credit" as he is serving a life sentence. Id. at 13. Shannon has also served much of his sentence in a purportedly "tumultuous"

penitentiary facility making his unblemished record all the more impressive.  Id. at 20.

The government also overlooks the fact that, despite Shannon's many mistakes, he did

serve in the military and was honorably discharged after six years of service.  Id. at 16.

 While the government views Shannon as being at a high risk of recidivating,

Shannon responds with various statistics supporting the conclusion that an inverse

relationship exists between age and recidivism.  Id. at 18.  In essence, because Shannon is

fifty-nine years old, he submits that his risk of recidivating is considerably lower than his

younger counterparts.  Id. at 18.

 Finally, Shannon takes issue with the government's view that "the confines of his

detention facility[]" are the "only thing protecting the public from Shannon's further

criminal conduct[.]"  Id. at 20.  Similarly, Shannon questions the government's view of

himself as a "true and unrelenting recidivist . . . ."  Id.  Shannon, instead, shares Benjamin

Franklin's belief that "nothing can be said to be certain, except death and taxes[]" and

points to his unblemished disciplinary record as the best indicator of his future conduct if

released into society.  Id.

 The court finds that the section 3553(a) factors weigh in favor of reducing

Shannon's sentence to 360 months.  It is true, as both parties agree, that Shannon

committed serious crimes and served time for numerous drug offenses preceding his

current sentence.  But despite all of this, Shannon has already served over eleven years.

Throughout the course of those eleven years, Shannon has maintained a commendable

disciplinary record that demonstrates his capacity to conform his behavior to society's

expectations.  An unblemished disciplinary record is most compelling where a prisoner,

like Shannon, has complied with the rules without any prospect of earning Good Time

Credit.  Overall, the court finds that Shannon's personal characteristics weigh in favor of a sentence reduction and that thirty years is sufficient to reflect the serious nature of his crimes.  The court also finds that this sentence is supported by the pertinent policy statements, as it is within the current guidelines range available for his offense given his offense level and criminal history category.  Consequently, the section 3553(a) factors weigh in favor granting Shannon's motion for compassionate release and reducing his sentence to 360 months.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS IN PART** Shannon's motion for compassionate release and resentences him to a term of imprisonment of 360 months.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 21, 2025**
**Charleston, South Carolina**